IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSHUA VERDE | § | |
| | § | |
| VS. | § | CA No. _____ |
| | § | |
| BLUE CROSS BLUE SHIELD | § | |
| OF LOUISIANA | § | |

## PLAINTIFF'S COMPLAINT

JOSHUA VERDE, Plaintiff, files this Complaint asserting causes of action in law and equity for relief against Blue Cross Blue Shield of Louisiana, Defendant.

## I.
## PARTIES

1.    Plaintiff, Joshua Verde, is a resident citizen of Houston, Texas.

2.    Defendant, Blue Cross Blue Shield of Louisiana ("BCBS"), is a domestic or foreign insurance company licensed to do business and doing business in the state of Texas, and can be served with process by serving its registered agent, Michelle S. Calandro, 5525 Reitz Avenue, Baton Rouge, LA 70809, or through Corporation Service Company, 211 East 7th St., Suite 620, Austin, TX 78701-3218 wherever it may be found.

## II.
## JURISDICTION AND VENUE

3.    This action against BCBS arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

1

4.    Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendant maintains business activity in and is in this district.

5.    Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

### III.
### STATEMENT OF FACTS

6.    Mr. Verde is an employee of Moncla Companies, LLC. At all relevant times, he was covered under an employee welfare benefit plan created by Moncla Companies, LLC. He was entitled to health care benefits under the Plan.

7.    Moncla Companies, LLC was the plan sponsor of the Plan.

8.    BCBS was the Claims Administrator and insurer of the Plan. To that end, BCBS policy no. 202400322 to group no.  78886ERC (the "Policy"). The Policy had an effective date of July 1, 2018.

9.    In September 2018, at a routine office visit, Mr. Verde's medical provider asked that he undergo a blood test. In November 2018, Mr. Verde's medical provider asked that he undergo an abdominal ultrasound.

10.   In November 2018, Mr. Verde called BCBS customer support to ensure that his treatment was covered. He was given verbal assurances by BCBS that the treatment was in his network and covered under the Policy.

11.     Instead, BCBS denied treatment on the basis that the treatment was for a non-covered service. Specifically, it denied coverage because it was being provided in relation to "other obesity due to excess calories." BCBS contended that this was a contractual exclusion.

12.     Mr. Verde appealed the denial in January 2019. In his appeal, he noted that he was given verbal assurances that the treatment was in his network and covered under the Policy. He also indicated that his medical visit and treatment was not for obesity. Instead, it appeared that BCBS simply assumed he was being treated for obesity due to a medical chart reference to his BMI and height.

13.     BCBS denied the appeal.

14.     Mr. Verde submitted a second appeal on March 15, 2019. In his appeal, he asked for clarification on what additional information BCBS needed for some of his denied treatment. He asked for clarification on other items where BCBS indicated that he did not owe any amount. He also clarified that his November 2018 ultrasound was not for obesity, but due to possible liver issue.

15.     At all relevant times, BCBS knew that doctors do not order ultrasounds for obesity. Upon information and belief, there is no occasion in which a medical provider would order an ultrasound to diagnose or treat obesity.

16.     BCBS denied the appeal by letter dated April 25, 2019. In denying the second appeal, BCBS cut and pasted identical language from its letter denying Mr. Verde's first appeal. It concluded by stating, "we hope you will find this appeal process provided you with every opportunity to address your concerns."

17.     However, Mr. Verde's concerns were never addressed. BCBS never spoke with any of his medical providers to find out why they ordered an ultrasound. It took no action to determine if he had liver disease. It simply denied his claim because it determined that he was obese.

18.     BCBS's behavior in this claim reveals its underlying motive to deny Plaintiff's claim, no matter the evidence. On information and belief, BCBS has taken a categorical approach to deny health insurance claims for other similarly situated insureds. This pattern of conduct evidences a biased approach and treatment of BCBS's approach to health insurance claims, including this one.

19.     It is estimated that more than one third of the population of Louisiana and exactly a third of the population of Texas are considered obese.[1] Denial of Plan benefits on this basis alone would result in the improper denial of coverage for thousands of BCBS's insureds, including Mr. Verde.

20.     Due to BCBS's wrongful denial of his claims, Plaintiff owes his medical providers at least $2,965. He continues to receive additional notices from collection agencies.

21.     Having exhausted his administrative remedies, Plaintiff brings this action to recover the benefits promised in the Plan and Policy.

## IV.
## CLAIMS & CAUSES OF ACTION

22.     The Moncla Companies, LLC Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq.* Moncla Companies, LLC is the plan sponsor. BCBS was the Claims Administrator and insurer of the Plan.

---

[1] Source: https://www.stateofobesity.org/states/la/ (last accessed August 31, 2019).

23.  As a Plan fiduciary, BCBS is obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct their investigation of a claim in a fair, objective and evenhanded manner.

24.  BCBS's adjustment of Plaintiff's claim was instead biased and outcome oriented. This was partly reflected by its denial of Plaintiff's claim, even after being presented with evidence that his claim was covered, that his treatment was medically necessary, and that it did not fit within the exclusion that BCBS claimed. It was also reflected in BCBS's unreasonable reliance on reviewers who lacked the training, education, and experience to objectively or competently review his claim. It was also reflected in BCBS's repeated use of incorrect and inappropriate guidelines for Plaintiff's medical condition or pursuant to Plan requirements.

25.  BCBS's interpretation of the Plan was not legally correct. It was also contrary to a plain reading of the Plan language.

26.  BCBS's interpretation of the Plan and Plan language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Plan terms. Alternatively, the Policy language upon which BCBS based its denial decision was ambiguous. The ambiguous nature of those terms requires those terms be construed against BCBS and the Plan and in favor of coverage for Plaintiff.

27.  BCBS's denial was made without substantial supporting evidence. Its decision to deny Plaintiff's claim was instead based upon rank speculation and guesswork. BCBS's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

28.  At all material times, BCBS acted on behalf of the Plan and in its own capacity as the Insurer and as Claims Administrator.

29.  BCBS's termination of Plaintiff's claim breached the terms of the Plan. This breach was in violation of 29 U.S.C. §1132(a)(1), entitling Plaintiff to the health insurance policy benefits to which he is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Plaintiff now sues.

## V.
## STANDARD OF REVIEW

30.  The default standard of review for denial of a benefit claim is *de novo.* Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

31.  The Plan or Policy may contain a discretionary clause or language Aetna may contend affords it discretion to determine eligibility for benefits, to interpret the Policy, and determine the facts. BCBS's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

32.  If discretion applies, the Court should afford BCBS less deference in light of its financial conflict of interest. BCBS's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of Plaintiff's claim and as the potential payor of that claim.

33.  BCBS's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. Aetna's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims.

34.    Each of these grounds, on information and belief, was a motive to deny Plaintiff's claim, along with the delay in payment or denial of claims of other BCBS policyholders and claimants.

35.    In light of its financial conflict, BCBS should be given little or no discretion in its claims decision.

36.    Alternatively, the standard of review of this claim should be *de novo,* affording BCBS no discretion in its interpretation of the terms of the Policy and Plan or in its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

37.    The Plan or Policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of Plaintiff's claim and BCBS's claims handling conduct, both in its interpretation of terms of the Policy and the Plan, and in its determination of the facts, should be *de novo.*

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

38.    Plaintiff requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. He is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

39.     The Plan and Policy do not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Texas Insurance Code. Plaintiff thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to him, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

40.     Plaintiff seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. He is entitled to recover those fees, together with his costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

Joshua Verde, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against Defendant, and issue judgment against Defendant as follows:

A.      That Defendant pay to Plaintiff all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

B.      That Defendant pay all reasonable attorney's fees incurred and to be incurred by Plaintiff in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C.      All such other relief, whether at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,


By:_____/s/ Amar Raval_____
        Amar Raval, TBA #24046682
        S.D. No. 619209
        Berg Plummer Johnson & Raval LLP
        3700 Buffalo Speedway, Suite 1150
        Houston, TX 77098
        (713) 526-0200
        (832) 615-2665 (Fax)
        araval@bergplummer.com

        ATTORNEYS FOR PLAINTIFF